### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

SHARON RENEE' CAMPBELL,                    *

    Plaintiff,                              *

    v.                                      *            Civ. No. JKB-24-3229

ABERDEEN PROVING GROUND                    *
FEDERAL CREDIT UNION,

    Defendant.                              *

    *     *     *     *     *     *     *     *     *     *     *     *

### MEMORANDUM

Plaintiff Sharon Renee' Campbell, proceeding pro se, sued Defendant Aberdeen Proving Ground Federal Credit Union ("Aberdeen FCU") for alleged employment discrimination. (ECF No. 1 at 4.) In her Complaint, Campbell argues Aberdeen FCU refused, on account of her race, to consider her for a promotion. (*See id.* at 5–6.)

Now before the Court is Aberdeen FCU's Motion to Strike Purloined Information Included in Plaintiff's Complaint. (ECF No. 9.) The Motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons below, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[1]

### A.    Facts Underlying Campbell's Complaint

Campbell is a payroll analyst at Aberdeen FCU, where she has worked for over a decade. (ECF No. 9-2 ¶ 7; ECF No. 12 at 2; *see* ECF No. 1 at 5, 9.) On July 17, 2022, she applied for an internal managerial position. (ECF No. 1 at 5.) She says she "met all the required qualifications

---

[1] Unless otherwise noted, all facts are undisputed.

and experience" for the job, such that the internal employment policy mandated her automatic referral to the hiring supervisor. (*Id.*) Even so, she alleges she did not receive even an interview, having been told she did not qualify for this or any other "leadership position" within Aberdeen FCU due to her lack of a college degree or other "additional certifications." (*Id.*) But Campbell rejects this rationale as pretextual, noting "several employees (all white females) who currently hold leadership positions" despite lacking those same credentials and experience. (*See id.*) She also alleges a "white female"[2] was hired for the position she was denied—again, despite shared "qualifications and experience" and lack of a "college degree and/or any certifications." (*Id.*)

For its part, Aberdeen FCU denies Campbell's account, stating that it "selected, on a non-discriminatory basis, the candidate [it] believed to be best qualified to serve [in the management position], without regard to protected class status." (ECF No. 10 ¶ 4.)

On October 1, 2022, Campbell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1 at 5; *see* ECF No. 10 ¶ 2.) On September 10, 2024, the EEOC informed Campbell there was no probable cause to believe Aberdeen FCU had unlawfully discriminated against her. (ECF No. 1 at 5.) Campbell soon requested a right-to-sue letter to allow her to press her claims in federal court. (*Id.*)

### B.    Facts Underlying Aberdeen FCU's Motion to Strike

On November 7, 2024, Campbell filed her Complaint, which claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. (ECF No. 1 at 4, 6.) Along with the above allegations, she included in her Complaint a financial table in support of her damages calculation of $250,000. (*See id.* at 9–10.) That table contains the name and salary details of the employee who was hired, over Campbell, into the managerial role ("Hired Employee"). (*See id.*)

---

[2] Campbell does not appear to mention her own race anywhere in her filings.

2

Twelve days later, on November 19, 2024, Campbell supplemented her pleadings with five additional documents. (*See* ECF Nos. 4, 4-1 to -4.) These include excerpts from Aberdeen FCU's employment policy, (ECF No. 4); screenshots of Campbell's and the Hired Employee's interview histories, which Campbell had forwarded from her work email to her personal email, (*see* ECF No. 4-1); two welcome emails Campbell received from an online industry forum, also forwarded from her work email to her personal email, (*see* ECF No. 4-2); the description of and qualifications for the managerial role, a comparison of Campbell's and the Hired Employee's credentials, and language from one of the Hired Employee's annual performance evaluations, (*see* ECF No. 4-3); and descriptions of other leadership positions within Aberdeen FCU, alongside the race and certain resume information of the employees who hold those positions, (*see* ECF No. 4-4).

On December 27, 2024, Aberdeen FCU filed its Answer, (ECF No. 10), and the instant Motion to Strike, (ECF No. 9). In the latter, Aberdeen FCU argues Campbell gained information without authorization, then improperly shared it with herself and on the Court's public docket, all to buttress her legal claims. (*See* ECF No. 9-1 at 2–3.) The information to which Aberdeen FCU objects includes the damages-calculation portion of the Complaint, which contains the name and salary details of the Hired Employee, (*see* ECF No. 1 at 10), as well as the latter four of the five supplemental documents, which contain the names, salaries, employment details, credentials, and races of multiple employees, including the Hired Employee, along with position descriptions and other information Aberdeen FCU describes as "confidential," (*see* ECF Nos. 4-1 to -4). (*See* ECF No. 9-1 at 2–3.)

In support of its argument that Campbell improperly obtained and used this information, Aberdeen FCU submitted an affidavit from Rachael Sickle, the organization's vice president of human resources. (*See* ECF No. 9-2.) Sickle testifies that, as a general matter, employees "are

3

not allowed to access [Aberdeen FCU] computer information outside of their work responsibility area." (*Id.* ¶ 5.) This restriction is formalized in Aberdeen FCU's ethical standards, which state, in relevant part:

> All information concerning the credit union, members or vendors obtained in the course of performing the duties of an employee, board member and volunteer is strictly confidential and shall never, during active service or thereafter, be disclosed to any third party or used in any manner other than the normal business activities of the credit union.

(*Id.* ¶ 6.) Sickle further testifies that Aberdeen FCU maintains its personnel records—including "general records," performance evaluations ("except as shared with an individual employee"), "hiring interviews," and "promotional evaluations"—as confidential documents "on a separate computer data section." (*Id.* ¶¶ 3–4.) These materials are made available only to dedicated human resources staff (and even then, just "on a need-to-know basis") and those holding supervisory roles ("as may be necessary to discuss a subordinate employee–specific situation"). (*See id.* ¶ 3.)

It is Sickle's testimony that Campbell, under the organization-wide ethics rules, "ha[d] no authority to access information . . . unrelated to her responsibilities for the preparation and payment of payroll." (*See* ECF No. 9-2 ¶ 8; *see also id.* ¶ 9.) Even beyond that general limitation, Sickle notes that Campbell was also "expressly" barred from accessing human resources records, given the additional restrictions that apply to those materials. (*See id.* ¶ 9.)

In her Response to Aberdeen FCU's Motion, (ECF No. 12), Campbell denies she did anything wrong in accessing the material she included in her pleadings. To start, she says she is "the administrator of the Human Resources Information Systems," a role that affords her "access to all systems and personnel files" at the organization. (ECF No. 12 at 2.) She alleges this access is "necessary in fulfilling [her] daily tasks" and "allows [her] to see the details of the documents being provided as evidence in this lawsuit." (*Id.*; *see also id.* at 7.) Campbell also alleges she is

4

"the type of employee who has always and currently goes above and beyond in [her] position as a Payroll Analyst." (*Id.* at 8.) In support of these contentions, she attaches two more documents: a description of her own job as payroll analyst, (ECF No. 12-1), and a table of her most recent evaluations, complete with the names of the two reviewing employees, (ECF No. 12-2).

Separate and apart from her assertions about her authority to *access* internal material in the course of her work, Campbell does not deny—and in fact admits—she used such material in her pleadings. (*See, e.g.*, ECF No. 12 at 2–3 (explaining that, in part, she filed job descriptions "available on Uconnect (our in-house website) for all employees to view").) She also admits, albeit somewhat obliquely, that she accessed other employees' personnel records to build her discrimination claim. (*See id.* at 2 ("Practically all the documents submitted to the courts in this lawsuit did not involve me going into an employee's personnel file."); *id.* at 2–3 (explaining that "an internal Human Resources Form . . . is where I obtained the majority of my information; not by going into employee[s'] personnel files and/or records.").)

Despite this, Campbell asks the Court to allow her to use the internal information in this litigation. (*See* ECF No. 12 at 3.) She offers several reasons she believes it should. First, she says "there were no other alternative means of obtaining th[e] information," as Aberdeen FCU "would have altered the[] documents if it was known that [Campbell] was going to proceed with this lawsuit"—something she describes as "a practice of [Aberdeen FCU's] which has been done previously." (*Id.*; *see also id.* at 8 (suggesting Aberdeen FCU "would have altered the document to show that an interview was conducted," in an effort to "create[] a he-said, she-said scenario").) Second, she says the information is "valid and factual and does not include personal information such as social security and taxpayer identification numbers, dates of birth and/or financial account numbers." (*Id.*) Third, she insists she neither sued "in bad faith" nor "present[ed] this

5

evidence . . for [her] own personal benefit" or "economic gain," but did so only "for [her] own personal legal interests" in "prov[ing] that [Aberdeen FCU] treated [her] unfairly in [its] interviewing process." (*Id.*; *see also id.* at 7–8.)

By contrast, Aberdeen FCU asks to strike nearly all the first set of materials from the pleadings and/or to seal them from public view. (ECF No. 9 at 1–2.) It also accuses Campbell of "respond[ing] to [its] claim that she misappropriated confidential documents by posting even more misappropriated documents" to the docket—namely, the description of her own job, (ECF No. 12-1), and the table of her evaluations, (ECF No. 12-2)—although it neither adds those documents to the list of materials it seeks to strike and/or seal, (*see* ECF No. 13 at 1, 3), nor formally requests such relief in a separate motion.[3]  Finally, it seeks attorneys' fees "as allowed by the Maryland Uniform Trade Secrets Act," given Campbell's "knowing misappropriation of [Aberdeen FCU's] trade secret information," along with other relief the Court deems appropriate. (ECF No. 9 at 2.)

## II.   ANALYSIS

Aberdeen FCU's Motion to Strike will be granted in part and denied in part.  Under the inherent authority of the federal courts to safeguard the integrity of their proceedings, this Court may prohibit a litigant from using information they obtained and/or used improperly, even if the relevant acts occurred prior to the litigation.  Based on the record the parties have assembled, the Court finds that Campbell improperly used confidential materials she found on Aberdeen FCU's computer systems.  She will be barred from using those materials as affirmative evidence in her case, even if the materials would have been obtained through discovery.  The materials will also remain under seal.  But the Court declines to award attorneys' fees or impose other sanctions.

---

[3] For that reason, only the first set of materials has been precautionarily sealed pending the resolution of the instant request. *See* Local Rule 105.11 ("Materials that are the subject of [a] motion [to seal] shall remain temporarily sealed pending a ruling by the Court.").

A. **Under Its Broad Inherent Authority to Manage Its Own Proceedings, the Court May Sanction Campbell's Improper Use of the Confidential Material.**

Federal courts have at their disposal a variety of tools to ensure the proper functioning of the judicial process. Several of these tools are provided by the Federal Rules of Civil Procedure, including Rule 12(f), under which Aberdeen FCU brings its Motion to Strike.

But Rule 12(f) is inapplicable here. That Rule permits a court, either *sua sponte* or upon a party's timely motion, to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although Aberdeen FCU is correct that Rule 12(f) "serves as a pruning device to eliminate objectionable matter from an opponent's pleadings," (ECF No. 9-1 at 4 (quoting *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012))), courts have long applied the Rule only to strike those statements that are seriously prejudicial and highly distracting, not merely objectionable in a general sense. *See Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020) ("Rule 12(f) motions generally will not be granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party."); *see also Xerox Corp. v. ImaTek, Inc.*, 220 F.R.D. 241, 243 (D. Md. 2003); *Fitchett v. Spartech, LLC*, 634 F. Supp. 3d 241, 243 (D. Md. 2022). Whatever else can be said of the allegedly purloined information in this case, it *is* relevant to Campbell's claims. *See, e.g.*, *Netter v. Barnes*, 908 F.3d 932, 939 (4th Cir. 2018); ("[A] plaintiff seeking to prove unlawful discrimination in employment will generally need to produce evidence of comparators, or similarly-situated employees of a different race, color, religion, sex, or national origin who have been treated differently.").[4]

---

[4] Other Rules-based tools are also unavailing. Both Rules 26 and 37, which provide for discovery-related orders and sanctions, in terms apply only in the context of formal discovery proceedings. *See* Fed. R. Civ. P. 26(c), 37(b)–(f); *see also United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, Civ. No. JRS-11-38, 2014 WL 66714, at \*3 (E.D. Va. Jan. 6, 2014); *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992); *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379–80 (9th Cir. 1988). But the problem here is material Campbell obtained *outside* formal

Still, federal courts possess a robust inherent authority to regulate the litigation conduct of those who appear before them. As the Fourth Circuit has explained,

> [d]ue to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. . . . Under the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions.

*United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461–62 (4th Cir. 1993) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). In fashioning a remedy under that authority, "the Court has a great deal of discretion." *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 570–71 (S.D.N.Y. 2008). And it may exercise that discretion whether or not the conduct at issue is addressed by other sanctioning provisions, such as those of the Federal Rules. *See Chambers*, 501 U.S. at 50. Because this power "is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and . . . only to the extent necessary." *Shaffer Equip. Co.*, 11 F.3d at 461 (first citing *Chambers*, 501 U.S. at 43, and then citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

District courts have repeatedly used their inherent powers to address situations in which litigants offer relevant evidence obtained through wrongful means outside the discovery process. *See, e.g.*, *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108–09 (E.D. La. 1992); *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993); *Pure Power*, 587 F. Supp. 2d at 568–69; *Spencer*, 292 F. Supp. 3d at 644–45; *see also* 6 James W. Moore et al., *Moore's Federal Practice - Civil* § 26.06 & n.23.1 (Matthew Bender 3d ed.) ("[T]he court may resort to its inherent power . . . when a party obtains

---

discovery. Rule 11 addresses only the intent of and basis for a litigant's legal and factual representations. *See, e.g.*, *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir. 1990). But despite any concerns about the source of the pleadings, nothing about their content suggests they are frivolous, vexatious, or otherwise baseless within the meaning of that Rule.

8

information outside the discovery process, and does so improperly."). As those courts have observed, this is a necessary adjunct of a functioning judicial process. *See Fayemi*, 174 F.R.D. at 324 ("Pursuant to this inherent authority, a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct."); *Shell Oil*, 143 F.R.D. at 108–09; *Armour Pharm.*, 838 F. Supp. at 1578.

## B.    Campbell Used Confidential Material in Violation of Aberdeen FCU's Ethics Rules.

On this factual record, it is plain to the Court that Campbell improperly used confidential materials she obtained from Aberdeen FCU's computer systems. As for the materials Aberdeen FCU identified in its Motion—page ten of Campbell's Complaint, (ECF No. 1), as well as four of the five supplemental documents, (ECF Nos. 4-1 to -4)—Campbell admits she found them in Aberdeen FCU's computer systems. (*See* ECF No. 12 at 2–3.) The ethics policy that binds all Aberdeen FCU employees expressly describes these materials as confidential, barring employees from making them available to "any third party" or using them in a manner inconsistent with the credit union's "normal business activities." (*See* ECF No. 9-2 ¶ 6.) So, whether or not Campbell was authorized to *access* the information she pled—an issue the parties dispute—the Court finds Campbell's *use* of that information clearly to violate the Aberdeen FCU ethics rules.[5]

It is less clear that Campbell improperly used the second set of supplemental documents. (ECF Nos. 12-1, 12-2.) Although Aberdeen FCU argues she did, (ECF No. 13 at 1), the second

---

[5] The standard of proof for a factual finding in the context of nonpunitive, inherent-power sanctions is not entirely clear. The Supreme Court has admonished that "the preponderance-of-the-evidence standard [is] the default standard of proof in American civil litigation," outside of three reasonably well-defined circumstances, none of which appear to describe this case. *See E.M.D. Sales, Inc. v. Carrera*, 134 S. Ct. 34, 38–39 (2025). But the Fourth Circuit has also expressly declined to decide whether the preponderance standard or the clear-and-convincing standard applies in similar situations. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 518 n.9 (4th Cir. 2018). Either way, this Court need not decide the issue, as the record supports a finding of misuse under both standards.

set, unlike the first, appears to contain only information directly relevant to Campbell herself: the description of her current job, (ECF No. 12-1), and a table of her performance evaluations, (ECF No. 12-2). Because both documents appear to apply only to Campbell herself, because they hold material the Court would expect most employees to have regarding their own job or performance, and because Aberdeen FCU has not specifically explained why Campbell should not be able to use them, (*see* ECF No. 13 at 1), without more, the Court is unwilling to find Campbell to have used them improperly when she published them in this litigation.

## C.     Campbell Offers No Persuasive Reason Why the Court Should Not Exercise Its Broad Authority in this Case.

Having found that Campbell's use of certain materials violated the employee ethics policy, the Court is unpersuaded by the reasons she offers as to why that use was nevertheless justified.

For one, Campbell's fears of evidence spoliation are without basis in this record. Although she argues Aberdeen FCU "would have altered these documents if it was known that I was going to proceed with this lawsuit," she offers no support for that proposition other than her bare assertion of it being "a practice of [Aberdeen FCU's] which has been done previously," (ECF No. 12 at 3), and her belief that Aberdeen FCU would seek to create a "he-said, she-said scenario," (*id.* at 8). While the Court takes seriously any possibility of destruction of evidence, what little Campbell offers does not make out a convincing threat of spoliation.

Even if Campbell's fears were well founded, she should have brought them to the Court's attention, not taken matters into her own hands. Spoliation is an egregious form of litigation misconduct, sanctionable under both the inherent power and the Federal Rules. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517–20 (D. Md. 2010). But it is through the threat and imposition of sanctions that courts enforce parties' duties to preserve and produce evidence. *See, e.g.*, *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

10

And while some discovery may be informal, occurring outside the dictates of the Rules and related orders, *see, e.g.*, *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014), in no case would Campbell be allowed to exercise unilateral, unauthorized self-help of the kind she exercised here. *See, e.g.*, *Spencer v. Pottstown Sch. Dist.*, 292 F. Supp. 3d 635, 644 (E.D. Pa. 2018).

Also unavailing are Campbell's arguments about the accuracy and innocuousness of the material. (*See* ECF No. 12 at 3). None of this changes the fact she used the material improperly. And the Court declines to craft truthfulness or harmlessness exceptions to the general rule that litigants must play fair—which here means complying with *all* preexisting legal duties, including those in the ethics policy. The Court likewise rejects Campbell's contention that the information *is* harmless. Her pleadings contain information whose unauthorized publication offends general notions of privacy—information like coworkers' salary data and educational history. It would be wrong to overlook this just because the pleadings lack the *most* sensitive data, like "social security and taxpayer identification numbers, dates of birth and/or financial account numbers." (*Id.*)

Nor can the Court abide Campbell's argument that her action was not "brought in bad faith." (ECF No. 12 at 3.) While the Court has no reason to think Campbell brought this action to vex or harass, the fact remains that she knowingly used her position of trust and responsibility—a position that gave her access to other employees' human resources records—to bolster her personal legal claims. (*See id.* at 2.) Given the language of the ethics rules, she had every reason to know this was not permitted. (*See* ECF No. 9-2 ¶ 6.) She should not enjoy the fruits of that effort.

Finally, the Court is unmoved by Campbell's suggestion that, whatever her wrongdoing, her use of the information vindicates a greater harm. (*See* ECF No. 12 at 3.) While the Court takes at face value Campbell's comment about suing, in part, to vindicate her rights under Title VII, it hastens to add that vindicating one's "personal legal interests" doubtless confers a "personal

11

benefit." (*See id.*) And motivations aside, a litigant may not invoke the courts to assert their legal

rights, then engage in extralegal conduct. *See, e.g.*, *Xyngular v. Schenkel*, 890 F.3d 868, 874 (10th

Cir. 2018). This principle does not bend according to the righteousness of a litigant's claims.

**D.      To Avoid Rewarding Campbell for Her Extralegal Discovery, and to Prevent Harm or Prejudice to Aberdeen and/or Its Employees, Aberdeen's Motion to Strike Will Be Granted in Part.**

To the extent Aberdeen FCU's Motion seeks to seal and strike the confidential material,

the Motion will be granted. It will be denied to the extent it seeks attorneys' fees or other relief.

1.      The Improperly Obtained Material Will Remain Sealed on the Docket, and Campbell Will Be Directed to File Redacted Copies of the Same.

Given the confidentiality of some of the information they contain, the five documents that

are currently sealed, (*see* ECF Nos. 1, 4-1 to -4), will remain sealed from public view. This is

critical to protect Aberdeen FCU's proprietary interest in its materials as well as the interests of

those whose information—name, salary, race, educational history, and more—Campbell pled.

But given the public's presumptive right of access to materials on the Court's docket, *see,

e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014), the Court will also direct Campbell

to refile narrowly redacted copies of her Complaint, (ECF No. 1), and all supplemental documents

thereto, (ECF Nos. 4, 4-1 to -4). The supplemental documents shall be filed as attachments to the

refiled Complaint, not as a separate docket entry. The redactions shall be no greater than necessary

to conceal truly confidential material. At the very least, this means there should be no redactions

in areas other than those specifically identified above—namely, page ten of Campbell's

Complaint, (ECF No. 1 at 10), and four of the five supplemental documents, (ECF Nos. 4-1 to -4).

The Court observes that, even within those specifically identified areas, it does not appear

that all material ought to be redacted. (*See, e.g.*, ECF No. 1 at 10 (listing salary information for

both the Hired Employee *and* Campbell).) To ensure that all and only truly confidential portions

of the pleadings are hidden from public view, the parties will be directed to meet and confer to agree on the scope of the redactions in the refiled documents.

With respect to the two additional documents Aberdeen FCU argues are confidential, but to date has not moved to seal and/or strike, (*see* ECF Nos. 12-1, 12-2), the Court will not order further relief. Later in the brief in which Aberdeen FCU argued the documents were confidential, it made clear that its only request, despite this accusation, was to grant the Motion already pending before the Court. (*See* ECF No. 13 at 3.) Because Aberdeen FCU has not modified the scope of its original request, much less shown how Campbell's use of the second set of documents—which, again, pertain primarily to *her*—was improper, the second set of documents will remain unsealed.

        2.    The Improperly Obtained Material Will Be Struck from the Pleadings, and Campbell Will Not Be Permitted to Use the Material in This Litigation.

Pursuant to its inherent authority, the Court will strike the improperly used material from the pleadings, and Campbell will be barred from using it as evidence in this litigation, except for purposes of rebuttal or impeachment. This limitation applies to all objectionable material—the confidential information contained in four of Campbell's five supplemental documents, (*see* ECF Nos. 4-1 to -4), as well as page ten of Campbell's Complaint, (*see* ECF No. 1 at 10)—even if it would otherwise be discoverable. The material to be struck shall consist of that determined by the parties to be fit for redaction under the prior instruction.[6] *See supra* Section II.D.1. This means the second set of documents, (ECF Nos. 12-1, 12-2), will not be struck, in full or in part. *See id.*

In crafting remedies under their inherent powers in the course of civil proceedings, courts consider a variety of objectives, including deterring similar future conduct, compensating those who were harmed, cleansing the proceedings of the taint of the wrongdoing, and safeguarding the

---

[6] To strike a pleading means to exclude it from the Court's later consideration, even if that pleading would remain otherwise viewable on the public docket. Here, of course, all the material to be struck will also be sealed, given the confidentiality concerns. But the two remedies are not necessarily coextensive.

integrity of the judicial process. *See, e.g.*, *Chambers*, 501 U.S. at 44–45; *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–08 (2017); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); *Shaffer Equip. Co.*, 11 F.3d at 462–63. Courts create such remedies "only to the extent necessary" to achieve those goals—no further. *Shaffer Equip. Co.*, 11 F.3d at 461–62.

The Court concludes that striking the redacted materials from the pleadings and barring their later affirmative use is adequate, but no greater than necessary, to address the harm here presented. This sanction alleviates any prejudice to Aberdeen FCU, to the extent Campbell pled materials that were not otherwise discoverable. It acknowledges the intrusion into Campbell's coworkers' privacy. And, most importantly, it signals to Campbell and other litigants that one must deal honestly before the courts. This ensures that all parties can press their arguments on an equal footing and that all legal duties—not just those created after litigation is commenced—are respected and discharged. *See, e.g.*, *Shell Oil*, 143 F.R.D. at 108–09.

At the same time, Aberdeen FCU should not profit from Campbell's misdeed, beyond those measures necessary to restore the organization to its rightful position in the litigation. For that reason, the prohibition on Campbell's use of the material extends only to the material's use as *affirmative* evidence, not as rebuttal or impeachment evidence. So, while Campbell may not offer this evidence to support her own dispositive motions or case-in-chief at trial, she may use it to reject or cast doubt on the facts Aberdeen FCU supplies first.

This sanction is no harsher than those imposed by other federal courts faced with similar facts. As explained above, at least some courts appear to have disallowed, for *any* purpose, the use of improperly obtained, otherwise discoverable information. *See, e.g.*, *Fayemi*, 174 F.R.D. at 325–26 (recognizing as "more appropriate" than dismissal "an order precluding the plaintiff from using in this litigation the . . . information that was wrongfully obtained"); *Shell Oil*, 143 F.R.D.

14

at 108–09; *Spencer*, 292 F. Supp. 3d at 643–45; *Armour Pharm.*, 838 F. Supp. at 1578. But at least one has allowed wrongfully obtained information to be used for narrow purposes—namely, as impeachment and/or rebuttal evidence. *See Pure Power*, 587 F. Supp. 2d at 569–71 & n.11. Under the circumstances of this case, the Court deems the second course the more prudent.

3.    Campbell Will Not Be Required to Pay Fees or Other Monetary Sanctions.

The Court will not grant Aberdeen FCU's request for attorneys' fees under the Maryland Uniform Trade Secrets Act. That statute provides, in relevant part, that "[t]he court may award reasonable attorneys' fees to the prevailing party if . . . [w]illful and malicious misappropriation exists." *See* Md. Code Ann., Com. Law. § 11-1204.

Putting aside whether any of the materials at issue in this case constitute "trade secrets," the record does not support a finding of "[w]illful and malicious misappropriation." To trigger the provision, the party from whom fees are sought must have misappropriated secrets both willfully and maliciously. *Bond v. PolyCycle, Inc.*, 732 A.2d 970, 977–78 (Md. Ct. Spec. App. 1999). No doubt, Campbell's actions were willful. *See id.* at 978 (holding one party's "t[aking] of files" to be "knowing, voluntary, and intentional," and thus willful, whether or not that party "believed that he was entitled to take" the material). But there is no reason to think her conduct was malicious. Malicious conduct requires "an improper motive," *id.* (quoting *Elliot v. Kupferman*, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1984)), which itself requires a purpose "to deliberately cause harm or injury," *id.* (citing *Henderson v. Md. Nat'l Bank*, 366 A.2d 1, 4 (Md. 1976)). The mere fact that an act *did* cause injury—essentially all Aberdeen FCU argues in its fee request, (*see* ECF No. 9-1 at 6)—is not enough. *See Bond*, 732 A.2d at 978.[7]

---

[7] The Court also seriously doubts the statute permits an award of attorneys' fees outside the resolution of a formal misappropriation claim. The statute refers to "the prevailing party." Md. Code Ann., Com. Law. § 11-1204. But Aberdeen FCU offers no authority for the idea that fees are available to parties who "prevail" on something less than a discrete claim—in this case, a factual finding and a related nondispositive motion. And the Court is unaware of any

The Court also declines to use its inherent powers to award attorneys' fees or order some other sanction. Again, the sanction that is adequate but no greater than necessary to ameliorate the harm in this case is that of barring Campbell's later affirmative use of the objectionable material. *See supra* Section II.D.2. That being so, it would be improper for the Court to use its inherent authority to order further relief.

## III.   CONCLUSION

"The occasion to consider the disciplining of [litigants] is not a happy one," *see Shaffer Equip. Co.*, 11 F.3d at 463, and courts do not lightly approach their duties in such circumstances. But this Court has found Campbell's use of confidential materials she obtained from Aberdeen FCU computer systems failed to comply with her workplace ethics code. To protect the integrity and reputation of the judicial process, to prevent unfair prejudice, and to deter future misconduct, the Court must limit Campbell's use of that material, no matter how meritorious she may believe her claims or actions to be.

DATED this ⛌5 day of February, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

---

like circumstance (in *any* context) in which that would be enough for "prevailing" status under a fee-shifting provision. Nor does the Court take Aberdeen FCU to assert a misappropriation counterclaim. Had it done so, the Court would expect to see some indication clearer than a set of accusations first raised in a motion to strike. (*See* ECF No. 9-1 at 5–6; *see also* ECF No. 10 (Aberdeen FCU's Answer, which does not mention misappropriation).) In any event, the Court need not decide these issues, given the lack of factual support for a finding of maliciousness.